**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>RANDAL WISE,<br><br>                Defendant. | Criminal Action No. 20-102 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Randal Wise's ("Defendant") Omnibus Motion. (ECF No. 33.) The United States of America (the "Government") opposed (ECF No. 35), and Defendant replied (ECF No. 37). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1.[1] For the reasons set forth herein, Defendant's Motion is granted in part and denied in part.

**I. BACKGROUND**

    **A. Criminal Complaint and Indictment**

On January 21, 2020, Defendant was charged in a criminal complaint in the District of New Jersey with attempting to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). (Crim. Compl., Mag. No. 20-15013 (ESK), ECF No. 1.) The Criminal Complaint alleges that in October 2019, an undercover law enforcement agent ("UC-1") posed as a fourteen-year-old boy on the internet dating application Grindr. (*Id.* ¶ 1.) The Government asserts that

---

[1] Local Civil Rule 78.1 is applicable to criminal cases in the District of New Jersey. *See* L. Civ. R. 1.1.

UC-1 received a message from Defendant and the two engaged in subsequent communications. (*Id.* ¶¶ 1–2.) The Government maintains that during these communications, UC-1 indicated he was fourteen and in the eighth grade. (*Id.* ¶¶ 2, 5.) According to the Government, Defendant and UC-1 exchanged sexually explicit communications and propositions. (*See generally id.* ¶¶ 3, 5–7.) These communications allegedly included images of Defendant's face and an adult penis sent from Defendant to UC-1. (*Id.* ¶¶ 2, 6, 8; *see also id.* ¶¶ 3, 6 (UC-1 sending Defendant "an image of a[] male's face that had been altered to appear like an adolescent's" and a shirtless male torso).)

The Government alleges that on or about October 26, 2019, Defendant "invited [UC-1] to [his] hotel, indicating that there was a pool there and he and [UC-1] could swim, or do anything that [UC-1] wanted to do." (*Id.* ¶ 9.) According to the Government, UC-1 indicated he preferred to meet at his residence, to which Defendant requested an address. (*Id.*) Upon arrival, Defendant was confronted by law enforcement agents and arrested. (*Id.* ¶ 10.) The Government maintains that Defendant "admitted to the agents that he engaged in sexual conversations on the Grindr application with a male[] who told [him] that he was [fourteen]." (*Id.*) According to the Government, Defendant insisted he did not believe UC-1 was, in fact, fourteen years old. (*Id.*) Nevertheless, the Government contends that Defendant "admitted that he sent photographs of his penis and tried to persuade [UC-1] to come to his hotel[.]" (*Id.*) Finally, the Government asserts that after he was arrested, Defendant consented to a search of his cell phone, during which agents discovered the images he had sent to and received from UC-1 and child pornography. (*Id.* ¶ 11.) On January 29, 2020, a federal grand jury returned a one-count Indictment charging Defendant with attempting to persuade, induce, entice, and coerce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). (ECF No. 4.)

### B.     Defendant's Moving Brief

In his Moving Brief, Defendant provides further detail on the factual background of the instant matter.[2] Defendant asserts the Somerset County Prosecutor's Office (the "State") conducted the October 2019 investigation that led to his arrest and indictment. (Def.'s Moving Br. 1, ECF No. 33-6.) According to Defendant, "[d]uring the course of the operation, multiple detectives were 'chatting' with different individuals" on the Grindr application. (*Id.* (citing Nov. 22, 2019 Hr'g Tr. 15:12-7, Ex. M to Def.'s Omnibus Mot., ECF No. 33-5).)

Defendant also recounts several state court hearings "conducted with regard to the State's effort to detain" him and provides the accompanying transcripts. (*Id.* at 3.) At the first hearing on October 31, 2019, the State introduced messages (the "S-9 Chat") between Defendant and a different undercover officer ("UC-2"). (*Id.* at 3; *see also* S-9 Chat *2–15,[3] Ex. I to Def.'s Omnibus Mot., ECF No. 33-3.) The New Jersey Superior Court judge requested additional information on the charges and noted that the Grindr application requires certification that its users are over eighteen years old. (Oct. 31, 2019 Hr'g Tr. 39:21-40:2, Ex. K to Def.'s Omnibus Mot., ECF No. 33-3.) When the hearing resumed on November 4, 2019, Defendant voiced concerns "that other conversations existed wherein he declined to be involved with someone claiming to be fourteen." (Def.'s Moving Br. 5.) Moreover, Defendant also argued that other Grindr messages demonstrated an instance where he ended communication and blocked a user when he believed the individual was underage. (Nov. 4, 2019 Hr'g Tr. 11:10-22, Ex. L to Def.'s Omnibus Mot., ECF No. 33-4.) Defendant alleged that this individual "tried to restart the conversation," but Defendant "said I'm not comfortable with your age so I don't want to talk to you anymore[.]" (*Id.* at 12:2-8.)

---

[2] For its part, the Government does not appear to contest this factual background. (*See generally* Gov't's Opp'n Br., ECF No. 35.)

[3] Page numbers preceded by an asterisk refer to the page number of the ECF header.

3

According to Defendant, the State, at that point, had not provided this communication. (*Id.* at 12:9-13.) The court, however, noted that there was nothing in the S-9 Chat "which would suggest that this conversation ended because" Defendant "had significant reason to believe that this person was . . . under the age of [eighteen]." (*Id.* at 20:12-18.)

At the next hearing, held on November 22, 2019, Defendant asserts "the State provided an additional chat which was also incomplete, but which revealed that [Defendant] had actually ceased communicating with someone who represented they were fourteen" (the "D-2 Chat"). (Def.'s Moving Br. 6; *see also* D-2 Chat *17–20, Ex. J to Def.'s Omnibus Mot., ECF No. 33-3.) At this hearing, the State represented that the two sets of messages—the S-9 and D-2 Chats—had been conducted the same day as the messages that led to Defendant's arrest, but with a different detective. (Nov. 22, 2019 Hr'g Tr. 20:9-25; *see also* Nov. 4, 2019 Hr'g Tr. 6:19-22 ("[Defendant had been] in contact with another undercover officer through the same operation the day before what we ended up charging him with.").) Defendant noted that there was a significant gap between the S-9 and D-2 Chats, and that their contents indicated that a picture had been exchanged. (Nov. 22, 2019 Hr'g Tr. 8:6-25.) Defendant, accordingly, asserted that the State had violated its discovery obligations by failing to provide exculpatory portions of these communications. (*Id.* at 11:3-25; *see also id.* at 12:16-20 ("Why would [Defendant and the undercover officers] be talking about a picture that was never exchanged in S-9? So, the State still is not giving us the whole story, there's still more out there[.]").) The State, however, argued that the reference to a picture in the D-2 Chat referred to the profile pictures associated with UC-2's Grindr user account. (*Id.* at 16:4-24 ("[J]ust because they're discussing a picture doesn't mean that there's a missing part of the conversation."); *see also id.* at 23:9-19.) Moreover, the State maintained that it had no further evidence "that fills in that gap." (*Id.* at 15:21-23.) The court ordered an additional hearing to resolve these picture issues. (*See generally id.* at 23:9-26:20.) At a December 3, 2019 hearing,

however, the State consented to Defendant's pre-trial release. (*See generally* Dec. 3, 2019 Hr'g Tr., Ex. N to Def.'s Omnibus Mot., ECF No. 33-5.)

Defendant asserts that, at some point and for reasons unknown to him, the Government took over the instant matter. (Def.'s Moving Br. 8.) On May 11, 2020, Defendant requested the following discovery disclosures:

> [T]his is to make a specific request for ALL chats, texts, calls, by whatever medium used, between [Defendant] and any law enforcement agent, at any time. I understand that there was an exchange between [Defendant] and another individual presenting as a [fourteen]-year-old using a different handle/avatar/screen name [than] the one used by law enforcement in the exchanges of October 24-25 (the ones supporting the current charge). I believe that it was on October 23[rd] but cannot be certain. In that exchange, when [Defendant] was advised the person was [fourteen], he is believed to have cut the communication. If this exists and is accurate, then this is [*Brady*] material and must be disclosed.

(*Id.*; Def. and Gov't E-Mail Correspondence ("E-Mail Correspondence") *27, Ex. O to Def.'s Omnibus Mot., ECF No. 33-5.) The Government replied that the communications Defendant requested had already been made available and that it had "produced all information in [its] possession that falls under [*Brady*] and will continue to do so." (E-Mail Correspondence *27.) Defendant then renewed his request, asking the Government to contact "the local investigators [to see] if there is anything else." (*Id.* at *26; Def.'s Moving Br. 8.) The Government responded:

> The case agent has confirmed that we do not have in our possession the chat you describe below, in which [Defendant] chatted with someone and cut off the conversation when the person indicated they were [fourteen]. The operation began on 10/24/2020, and aside from the [two] communications I have produced—(i) the chat [with UC-1] that forms the basis for the [Criminal C]omplaint; and (ii) a separate chat with [UC-2] posing as a [fourteen]-year-old, which I re-sent yesterday—law enforcement does not have any other chats with your client. To the extent that the chat you describe exists, it may have been with a true [fourteen]-year-old, and/or a non-law enforcement officer, or a law enforcement officer that we have not identified and was not part of the operation. The Somerset County Prosecutor's Office and the ICAC Task Force have confirmed that

5

> they have turned over all chats relevant to the investigation to the
> FBI.

(E-Mail Correspondence *24; Def.'s Moving Br. 9.)

On December 11, 2020, Defendant filed the instant Omnibus Motion. (ECF No. 33.) Defendant seeks an order: (1) "[r]equiring the [G]overnment to make [D]efendant's telephone available to his expert and permit a mirror image to be made of [its] contents"; (2) "[p]rovid[ing] his expert with unfettered access to the communication devices used by the two undercover officers"; and (3) "[e]xtend[ing] his time to file additional motions based upon information developed through forensic examination." (*Id.*)

## II. DISCUSSION

Defendant "submits that there are additional communications between himself and undercover officers that were not provided to the defense. [Defendant] wants access to his cellular telephone for a forensic examination conducted by a defense expert. [Defendant] also suggests that the" Government "has failed to provide exculpatory information in accordance with" *Brady v. Maryland*, 373 U.S. 83 (1963). (Def.'s Moving Br. 9–10; *see also id.* at 12 ("It is unclear if [the Government] performed any independent investigation or forensic analysis to show compliance with their obligations under" *Brady*.).) Moreover, Defendant asserts "there are missing portions to the communications" provided by the Government.[4] (*Id.* at 13.) Defendant, therefore, argues that because "the State of New Jersey has not acted properly with regard to this investigation[,]" he "should not be required to rely upon the State and Federal Government to perform" a review of his cell phone and any potential exculpatory evidence. (*Id.* at 16.) Accordingly, Defendant requests

---

[4] Defendant also raises concern regarding the Grindr application on his phone and potentially related exculpatory communications. Defendant asserts that the Government maintains that he deleted the application before turning his cell phone over to the FBI. (Def.'s Moving Br. 14–15.) Defendant argues that if the application was deleted, it was done by someone other than him. (*Id.*) "The Government[, however,] has confirmed that the Grindr application was not deleted from the Defendant's phone." (Gov't's Opp'n Br. 5 n.3.)

6

(1) "an expert of his choice be given unfettered access to his telephone . . . and permitted to make a mirror image [of] its contents for evaluation" and (2) "access to the communications devices utilized by" all undercover officers who communicated with Defendant. (*Id.*)

In opposition, the Government submits that it "has already produced all relevant evidence in its possession related to chats on the Grindr application that were recovered from the Defendant's cellular device[,]" and represents it is well aware of its *Brady* obligations. (Gov't's Opp'n Br. 4–5.) According to the Government, it has made the following disclosures to Defendant:

> on March 15, 2020, the Government made its initial Rule 16 disclosures to the Defendant, which included screenshots of the chats between the Defendant and UCs -1 and -2; videos scrolling through the Defendant's chats with UC-1; audio and video recordings and a transcript of the Defendant's statements to law enforcement; the Defendant's criminal history; a sanitized extraction report showing [Defendant's] chats with [another individual] regarding the sexual abuse of Minor Victim-1;[5] charging documents and investigation reports from the Somerset County Prosecutor's Office; and court records related to the Defendant's 2008 conviction for sexual battery. Thereafter, as the Government continued to conduct its investigation and re-analyze the data extracted from the Defendant's cellular device, it provided to the defense additional materials in at least three additional disclosures between December 2020 and January 2021. These disclosures included additional extraction reports from various applications on the Defendant's phone, including a 3,849 page Grindr extraction report and photographs of chats on the Grindr application on the Defendant's phone, including chats with UC-1 and UC-2 and the Mark Grindr Chat.[6] Moreover, on several occasions between March

---

[5] The Government asserts that upon review of Defendant's cell phone, it found "an ongoing text message exchange between [Defendant] and Michael Padgett ('Padgett') regarding the sexual abuse of a thirteen-year-old boy ('Minor Victim-1')." (Gov't's Opp'n Br. 3.) The Government alleges that in the text messages, the two "planned where and how they would sexually abuse Minor Victim-1." (*Id.*) Furthermore, the Government asserts Padgett, at Defendant's request, sent Defendant four images and a video depicting child pornography. (*Id.*)

[6] The Government refers to the communication Defendant alleges has been withheld—a communication with an individual other than UC-1 and UC-2 that was allegedly ended after Defendant discovered the individual was a minor—as the "Mark Grindr Chat." (Gov't's Opp'n Br. 4.)

7

> 2020 and January 2021, with each of the Defendant's attorneys, the
> Government made the Defendant's cell phone available to the
> defense for inspection and evaluation at [FBI] offices.[7]

(*Id.* at 5–6.) Furthermore, to the extent that Defendant seeks purported additional communications that occurred outside of the State's operation and investigation, the Government maintains it "has no duty to retrieve evidence that is not in its agents' possession or control[.]" (*Id.* at 6.) Finally, the Government argues that Defendant's request for access to law enforcement devices is "overbroad and without basis." (*Id.* at 7.)

In *United States v. Bagley*, 473 U.S. 667, 675 (1985), the Supreme Court noted that:

> The *Brady* rule is based on the requirement of due process. Its
> purpose is not to displace the adversary system as the primary means
> by which truth is uncovered, but to ensure that a miscarriage of
> justice does not occur. Thus, the prosecutor is not required to deliver
> his entire file to defense counsel, but only to disclose evidence
> favorable to the accused that, if suppressed, would deprive the
> defendant of a fair trial[.]

Moreover, as the Government correctly observes, "the requirement that the Government disclose the material evidence in its possession is fundamentally different from placing an affirmative obligation on prosecutors to ferret out any potentially exculpatory evidence." *United States v. Cocchiola*, 358 F. App'x 376, 381 (3d Cir. 2009) (citations omitted). As detailed above, the Government represents it has fulfilled its *Brady* obligations and will continue to do so. (Gov't's Opp'n Br. 7.) Furthermore, the Government asserts that, "[n]otwithstanding the fact that the Defendant has no legal or factual basis for the claims in his Motion, the Government is continuing to investigate the Defendant's claim with respect to the Mark Grindr Chat and will provide any additional information to the defense as it becomes available." (*Id.* (further noting that the

---

[7] The Government asserts that "[b]ecause the Defendant's phone contains images of child pornography, which is illegal to transport and possess, defense counsel cannot take physical possession of the device." (Gov't's Opp'n Br. 6 n.4.) "For the same reason, the Government is also unable to produce a full, unredacted copy of the contents of the Defendant's phone." (*Id.*)

8

Government "has analyzed and re-analyzed the evidence and confirmed that it does not have possession of any other chats between [Defendant] and undercover law enforcement officers aside from those that have been turned over to the defense").) It appears, therefore, that the Government has more than adequately cooperated with Defendant's discovery requests and pursuit of exculpatory communications. The Court, accordingly, rejects Defendant's argument that the Government violated its *Brady* obligations. *See, e.g., United States v. Baer*, No. 15-417, 2018 WL 2148880, at *1 (D.N.J. May 10, 2018) (denying as moot defendant's request for *Brady* material because the court's standing order required such disclosure and the government represented it was aware of, and had fully complied with, its obligations).

Finally, regarding Defendant's request for access to both his and the State's undercover officers' communications devices, the Government asserts it has already produced the evidence Defendant seeks, including "videos and screenshots in which a law enforcement officer scrolled through every conversation with [Defendant] contained on UC-1's operational cell phone." (Gov't's Opp'n Br. 1, 4–5, 7–8.) Furthermore, the Court notes that the Government has provided Defendant with several opportunities to inspect and evaluate his cell phone. (*Id.* at 5–6.) Defendant suggests that his cell phone "is not something that can be reviewed in a matter of hours[,]" and that the Government's offer "deprives [him] of the right to assist in his own defense and have access to his own property." (Def.'s Reply Br. 4, ECF No. 37.) The Court, however, does not find this argument persuasive. *See, e.g., United States v. Phillips*, 854 F.2d 273, 277 (7th Cir. 1988) ("[W]e hasten to point out that *Brady* does not grant criminal defendants unfettered access to government files."); *United States v. Davis*, 752 F.2d 963, 976 (5th Cir. 1985) ("[The defendant] merely sought to conduct a fishing expedition for exculpatory material. The government is correct in asserting that the court is simply not required to ensure access to all government material in

9

order that he might be able to find something exculpatory for his case."). The Court, therefore, denies Defendant's request as overbroad and, accordingly, denies Defendant's Omnibus Motion.[8]

### III. CONCLUSION

For the reasons set forth above, Defendant's Omnibus Motion is granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[8] Defendant also requests additional time to file pre-trial motions concerning his arrest, the seizure of his telephone, and the consent he provided. (Def.'s Moving Br. 16–17.) The Court grants Defendant's request.

10