**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RANDAL L. WISE | Criminal Action No. 20-102 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on three motions filed by Defendant Randal L. Wise ("Wise"): a Motion to Suppress (ECF No. 49), a Motion for Issuance of Subpoena (ECF No. 50), and a Motion for Severance of Counts (ECF No. 51). The Government opposed (ECF No. 53), Wise replied (ECF No. 57), and the Government sur-replied (ECF No. 62). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1. For the reasons set forth below, the Court denies the Motion for Severance, grants the Motion for Issuance of Subpoena, and denies the Motion to Suppress.

**I.   BACKGROUND**

On January 28, 2021, a federal grand jury charged Wise in a four-count superseding indictment ("Superseding Indictment," ECF No. 36) with Attempted Online Enticement of a Minor (Count 1), Transportation of Child Pornography (Count 2), Possession of Child Pornography (Count 3), and Attempt to Transfer Obscene Matter to a Minor (Count 4).

A.      **Counts 1 and 4**

From October 24 to 26, 2019, Wise allegedly engaged in a series of chats using the Grindr application with users who indicated they were teenage boys.[1] (Gov't's Opp'n Br. 2, ECF No. 53.) Specifically, on October 25 and 26, Wise, a resident of Indiana who was traveling to New Jersey for work, allegedly chatted with an undercover officer ("UC-1"), who told Wise he was a 14-year-old boy in eighth grade. (*Id.*) Wise sent UC-1 three photographs of his genitals and one photograph of his face. (*Id.* at 5.) Wise asked UC-1 for nude photographs and invited UC-1 to his hotel room in New Jersey, offering to pay for a taxi or Uber ride. (*Id.*) On October 26, 2019, Wise again invited UC-1 to his hotel room. (*Id.*) When UC-1 indicated that he preferred to meet at his residence, Wise took an Uber to the address provided by UC-1. (*Id.*) This conduct forms the basis for Count 1. (Superseding Indictment 1.)

In addition, on October 24, 2019, Wise allegedly chatted with an undercover law enforcement officer ("UC-2") who told Wise he was a 14-year-old boy and a high school sophomore. (Gov't's Opp'n Br. 4-5.) During the conversation, Wise allegedly sent UC-2 two photographs of his genitals and requested nude photographs of UC-2. (*Id.* at 5.) Wise's transmission of the photographs of his genitals, allegedly believing that he was sending them to a 14-year-old boy, forms the basis for Count 4. (Superseding Indictment 4.)

When Wise arrived at the address provided by UC-1, he was arrested by law enforcement officers. (Gov't's Opp'n Br. 6 (citing Arrest Report, Ex. A to Gov't's Opp'n Br. 1, ECF No. 53-1).) The Government states that when officers placed Wise under arrest, the officers noticed that the screen on Wise's cellular phone was unlocked and displayed the Grindr chat between Wise and

---

[1] As of July 2021, Grindr is the largest social networking application for gay, bisexual, transgender, and queer people. *See* www.grindr.com/about.

UC-1, including the apartment number UC-1 had provided to Wise. (*Id.*)[2] Officers photographed the screen, along with other items in Wise's possession, including his driver's license and hotel key card. (*Id.*)

Officers read Wise his *Miranda* rights and acknowledged both verbally and in writing that he was advised of those rights. (*Id.*) Wise then signed a *Miranda* waiver and provided a voluntary statement to law enforcement, which was video recorded. (*Id.*) During the interview with a Somerset County Police Department detective, Wise acknowledged that he had engaged in an online chat with an individual who stated he was fourteen. (Statement of Randal Wise at 5, Ex. D to Gov't's Opp'n Br., ECF No. 53-3.) He admitted to sending photographs of his genitals and trying to persuade UC-1 to come to his hotel room. (*Id.* at 6-7.) Wise insisted, however, that he did not believe UC-1 was fourteen and believed he was twenty-four based on a photograph UC-1 sent of his torso. (*Id.* at 5.)

### B.  Counts 2 and 3

After obtaining Wise's written and verbal consent, the Government performed a data extraction from Wise's phone. (Gov't's Opp'n Br. 3.) From that extracted data, the Government discovered a text conversation between Wise and another individual (the "Individual"), taking place between November 2018 and April 2019, in which the two allegedly discussed sexually abusing a 13-year-old boy (the "Minor Victim"). (*Id.* at 8.) The Government alleges that, at Wise's

---

[2] In his Affidavit, Wise acknowledges, "[m]y telephone was open as indicated by the Somerset County Police immediately prior to my arrest." (Wise Decl. ¶ 12, ECF No. 57-1.) In his Motion to Suppress, Wise "vehemently disputes" that the Grindr chat was visible; but the Motion lacks an affidavit based on personal knowledge as required for a motion to suppress. (Def.'s Mot. to Suppress 1, ECF No. 49-1; *see United States v. Ruggiero*, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993), *aff'd*, 44 F.3d 1102 (2d Cir. 1995). Wise's Affidavit, submitted with his Reply Brief, does not repeat his denial that the Grindr chat was visible. Therefore, there are no facts based on personal knowledge before the Court that challenge the Government's account.

request, the Individual sent Wise four images of child pornography of the Minor Victim in December 2018,[3] and one video depicting child pornography of the Minor Victim in March 2019. (*Id.*) The Individual indicated in the text messages that he took the photographs in his backyard. (*Id.*) The Government alleges that these images were in Wise's phone when he traveled to New Jersey from Indiana on or about October 23, 2019. (*Id.*) This conduct forms the basis for Counts 2 and 3. (Superseding Indictment 2-3.)

## II.     PARTIES' POSITIONS

### A.     Wise's Motion to Suppress

In his Motion to Suppress Evidence, Wise argues that law enforcement officers violated his Fourth Amendment rights when they allegedly "entered [his] telephone without a warrant." (Def.'s Mot. to Suppress 4, ECF No. 49-1.) Wise implies that a photograph taken by law enforcement of his phone, showing the Grindr chat with UC-1, proves that officers searched his phone before obtaining his consent. (*See id.* at 1.) The Motion does not contain an Affidavit articulating specific facts as to the alleged Fourth Amendment violation.

Wise's reply brief, however, includes a declaration alleging additional facts as to law enforcement's handling of his phone and raises new arguments. (Wise Decl., ECF No. 57-1.)[4]

---

[3] The Government refers to the four images as being sent in December 2019. The Court presumes this to be a typographical error, given that Wise was in custody in December 2019, and the conversation with the Individual is alleged to have taken place between November 2018 and March 2019.

[4] Ordinarily, "[t]he reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court." *United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996). Counsel for Wise cites lockdowns at Wise's prison facility due to COVID-19 and a "completely inadequate videoconferencing application" for the delay in obtaining an affidavit and fully setting forth facts sufficient to justify an evidentiary hearing. (Def.'s Reply Br. 5, ECF No. 57.) Given the extraordinary circumstances presented by COVID-19 the Court will consider the otherwise untimely introduction of new arguments in Wise's reply brief. The Court granted the Government's request to sur-reply so that it could address the new arguments and allegations.

Wise argues that police did not have probable cause to arrest him because a photo sent by UC-1 showed a shirtless male torso that was "clearly an adult male." (Def.'s Reply Br. 3.) He further claims that upon his arrest, officers took his phone and "manipulated [it] to keep it open" and "foraged through the phone." (Wise Decl. ¶ 12; Def.'s Reply Br. 7.) Wise alleges that after being placed under arrest, he waited in a police car for more than an hour, and when he asked an officer what was taking so long, "[the officer] indicated they were searching my telephone." (Wise Decl. ¶ 12.) Wise does not name the officer who made this statement or provide any additional description about this officer. Wise also claims that when he was later presented with a consent form to search his phone, "the telephone number and 'IMRI'[5] were written on the form." (*Id.* ¶ 13.) Wise contends that the telephone and IMEI numbers "could only be obtained from inside the telephone." (*Id.*) Wise also requests an evidentiary hearing on his motion to suppress. (Def.'s Reply Br. 5.)

The Government disputes many of the factual claims in Wise's Affidavit, characterizing them as "bald-faced allegations and conclusory statements" lacking support, and asserts that law enforcement's handling of Wise's phone was legal and consistent with departmental protocol. (Gov't's Sur-Reply 1-5, ECF No. 62. *See generally* Gen. Guidelines for Seizing Mobile Devices, ECF No. 62-1.) The Government claims that it obtained Wise's phone number from Wise during his interview and that it obtained the IMEI number through the phone's settings application for the limited purpose of conducting an inventory search and obtaining a search warrant. (Gov't's Sur-Reply 4.) Finally, even if law enforcement officers conducted an illegal search, the Government contends, Wise's later written and verbal consent purged the taint of any earlier

---

[5] Wise appears to be referring to the International Mobile Equipment Identity ("IMEI") number, a unique identification number assigned to every mobile phone. *See Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 626 (N.D. Cal. 2020).

illegality. (*Id.* at 6.) Alternatively, the Government argues, because officers would have inevitably discovered Wise's data using a search warrant, the evidence is still admissible. (*Id.* at 6-7.) As to Wise's request for an evidentiary hearing on the Motion to Suppress, the Government argues that Wise's factual allegations in his Affidavit are insufficiently detailed to warrant a hearing. (*Id.* at 1-2.)

### B. Wise's Motion for Issuance of Subpoena

In a second motion, Wise requests that the Court grant the issuance of a subpoena to Grindr under Federal Rule of Criminal Procedure 17(c)(1).[6] (*See generally* Def.'s Mot. for Issuance of Subpoena, ECF No. 50-1.) He seeks material from Grindr that he believes will show that "the [G]overnment's production is incomplete or has been tampered with." (*Id.* at 2.) He claims that "portions of [Wise's Grindr] conversations have been omitted and that profiles of individuals he communicated with have been modified." (*Id.*) To that end, Wise requests a subpoena for "all communications between himself and anyone else [on the Grindr app] on and including October 24, 2019, through October 26, 2019, as well as complete [Grindr] profiles for Wise and the individuals he was communicating with." (*Id.* at 3-4.) He also requests "certification[s] [obtained by Grindr] from each of the undercover officers that the user is over eighteen years of age." (*Id.* at 2.)

The Government responds that Wise's claims of discovery misconduct "are without merit or support, and the Government has complied with its discovery obligations in this case." (Gov't's Opp'n Br. 31.) Yet, the Government does not oppose Wise's motion but requests that the subpoenaed records be received by the Court first. (*Id.*) The Government requests that the Court conduct an *in camera* review of these records to prevent disclosure of any "sensitive records to

---

[6] All references to "Rule" or "Rules" refer to the Federal Rules of Criminal Procedure.

which the defendant is not entitled and which could damage the privacy and reputation interests of third parties." (*Id.*) The Government also requests that it be given an opportunity to review the records so that it may redact "sensitive law enforcement information that is not relevant to this case, including materials that could damage the privacy and reputation interests of uncharged individuals." (*Id.*)

### C.   Wise's Motion to Sever

Finally, Wise moves to sever Counts 1 and 4 from Counts 2 and 3 for trial. Wise first argues that Counts 2 and 3 should not be joined under Rule 8(a) because they are "factually completely unrelated" and not "of the same or similar character" as Counts 1 and 4. (Def.'s Mot. to Sever 1, 3, ECF No. 51-1.) Alternatively, Wise argues that, even if the Court found that the four counts are sufficiently related, he would be denied his right to a fair trial and therefore requests that the counts be severed under Rule 14(a). (*Id.* at 4-6.) He argues that it would be "psychologically impossible" for a jury to compartmentalize the evidence from the two sets of counts and that a limiting instruction would be insufficient to avoid substantial prejudice to him. (*Id.* at 6.) Further, in his Affidavit, Wise claims that he has "every expectation" that he would testify in his defense as to Counts 1 and 4 but would "almost certainly" exercise his right to remain silent on Counts 2 and 3. (Wise Decl. ¶ 11.)

The Government argues that the counts are properly joined because "child molestation and child pornography . . . plainly represent acts of 'similar character' involving the extraordinary mistreatment of children." (Gov't's Opp'n Br. 24-26 (citing *United States v. Rivera*, 546 F.3d 245, 254 (2d. Cir. 2008)).) As to severance under Rule 14(a), the Government argues that judicial economy counsels against severance and that the evidence for all counts will overlap. (*Id.* at 26-27 (noting that possession of child pornography could be admitted to show "Wise's intent to entice UC-1 and transfer obscene matter to UC-2").) The Government further asserts that evidence for

Counts 2 and 3 could show absence of mistake and lack of accident under Federal Rule of Evidence 404(b) for Counts 1 and 4—specifically, to contradict Wise's claim that he did not believe UC-1 was fourteen. (*Id.*) Moreover, the Government argues that Wise has articulated nothing more than "generalized prejudice" that could be cured by a limiting jury instruction. (*Id.* at 28.) And, the Government counters that Wise has not sufficiently specified the prejudice he would suffer by testifying to one set of counts while refusing to testify to another. (Gov't's Sur-Reply 8.)

### III.   DISCUSSION

#### A.   Motion to Suppress

##### 1.   *Legal Standard*

The Fourth Amendment provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Searches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (citations omitted). On a motion to suppress evidence on Fourth Amendment grounds, the moving party "has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Howard*, 787 F. Supp. 2d 330, 331 (D.N.J. 2011) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). A search is not unreasonable where the party conducting the search or seizure has either a warrant and probable cause or where consent is voluntarily given. *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011) (citations omitted).

When evidence has been obtained through unlawful means, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998) (alterations in original) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "The government bears the burden of proving that evidence would have inevitably been discovered, and it can satisfy that burden by demonstrating that the police, following their routine procedures, would have uncovered it." *United States v. Bradley*, 959 F.3d 551, 557 (3d Cir. 2020) (citing *Vasquez De Reyes*, 149 F.3d at 195).

    2.    *Analysis*

        a)    Probable Cause

In moving to suppress the evidence obtained from his cell phone, Wise first argues that the Government lacked probable cause to arrest him. (Def.'s Reply Br. 5-6.) He points to the photo sent to him by UC-1 depicting a bare male torso with chest hair, as evidence that Wise believed UC-1 was an adult. (*Id.*) The Government responds that it had probable cause based on the undercover officers' conversation with Wise, during which the officers repeatedly identified themselves as 14-year-old boys; Wise's transmission of nude photographs to both UC-1 and UC-2; Wise's attempt to meet in person with UC-1; and the officers' identification of Wise when he arrived at the apartment complex by the photo he sent UC-1 of his face. (Gov't's Opp'n Br. 11-12.) The Government asserts that the "totality of the circumstances indicated to law enforcement officers that the defendant had attempted to transfer obscene matter to a minor and attempted to entice a minor to engage in unlawful sexual activity." (*Id.* at 12.)

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to

9

conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). The Court finds that, based on the totality of the circumstances, officers had ample probable cause to arrest Wise. The Court agrees with the Government's proffered pre-arrest evidence. (*See* Gov't's Opp'n Br. 11-12; Compl. ¶¶ 2-10, ECF No. 1; Grindr Chat Between Def. and UC-1, Ex. I to Def.'s Mem. in Supp. of Pretrial Mot. at *8-*15, ECF No. 33-3.) Law enforcement officers had further probable cause to arrest Wise at the apartment complex, based on these facts and their ability to identify Wise using the photo of his face that he transmitted to UC-1. (*See* Gov't's Opp'n Br. 11-12.) In arguing that the police lacked probable cause, Wise offers a single photograph sent by UC-1 of a nude male torso with chest hair as evidence that he did not believe UC-1 was a minor, and therefore lacked the intent necessary for either offense. (*See* Wise Decl. ¶ 10.) The Court finds this evidence insufficient to overcome the substantial proof offered by the Government establishing probable cause for Wise's arrest. *See United States v. Steele*, 513 F. App'x 834, 837-38 (11th Cir. 2013) (finding probable cause for arrest where suspect made sexually explicit statements to undercover officers).

        b)        The Seizure of Wise's Phone

Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Dickerson*, 508 U.S. at 375 (citations omitted). "If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.*, if 'its incriminating character [is not] immediately apparent," the plain-view doctrine cannot justify its seizure." *Id.* (quoting *Horton v. California*, 496 U.S. 128, 136 (1990)). Further, in addition to establishing probable cause for the arrest, the Government must show that the seized item was in plain view and that "its incriminating character" was "immediately apparent." *Horton*, 496 U.S. at 136-37.

Here, Wise does not dispute that he was holding the phone at the time of his arrest, only that his chat with UC-1 was not visible. (Def.'s Mot. to Suppress 1.) But officers knew that Wise's communications with UC-1—the basis for Counts 1 and 4—took place over Grindr, a smartphone application. The incriminating character of Wise's phone was therefore apparent to officers, justifying their warrantless seizure of the device. *See United States v. Schuttpelz*, No. 07-20410, 2010 WL 200827, at *4 (E.D. Mich. Jan. 15, 2010) ("Both the cellphone and the laptop computer were properly seized: the cellphone identifies the person constantly calling Special Agent Emmons that day; the laptop relates to the online chats between [the d]efendant and Special Agent Emmons regarding the on-line enticement under 18 U.S.C. § 2422(b)."), *aff'd*, 467 F. App'x 349 (6th Cir. 2012); *United States v. Boxley*, No. 17-177, 2019 WL 6828393, at *9 (W.D. Pa. Dec. 13, 2019) ("Upon opening the door of the vehicle, [the detective] observed [the defendant] communicating via FaceTime with [a co-defendant] in plain view which, when coupled with all of the facts known to this experienced officer, provided probable cause to arrest him for conspiracy and seize the cell phone.").[7]

       c)  The Pre-Consent Search of Wise's Phone

Wise next alleges that law enforcement officers violated his Fourth Amendment rights when they entered his phone prior to obtaining his written and verbal consent. (Def.'s Mot. to Suppress 1-2.) Wise alleges three forms of purportedly illegal entry: (1) the Government searched Wise's phone for the phone number, (2) the Government searched Wise's phone for the IMEI number, and (3) the Government took a photograph of Wise's unlocked phone. (*See* Def.'s Reply Br. 6-7, 9.) The Court disagrees that any of these actions constituted Fourth Amendment violations.

---

[7] The Court further notes that Wise has not personally attested to his phone being not visible to police officers. *See Ruggiero*, 824 F. Supp. at 393-95 (denying motion to suppress seized evidence where "no defendant submitted an affidavit based on personal knowledge concerning the circumstances of the search").

11

Under the settled test in *Katz v. United States*, the Fourth Amendment protects information and items in which citizens have a "reasonable expectation of privacy." 389 U.S. 347, 361 (1984). "A 'search' does *not* occur . . . unless the individual manifested a subjective expectation of privacy in the searched object, and society is willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 27-28 (2001) (citing *California v. Ciraolo*, 472 U.S. 207, 211 (1986)). Equally settled is that a constitutional violation can be cured by a showing that the illegally searched evidence would have been inevitably discovered. *See Nix*, 467 U.S. at 443-44; *Vasquez De Reyes*, 149 F.3d at 195 ("[I]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received."). The Court finds the inevitable discovery doctrine dispositive here.

Even if officers searched Wise's phone illegally, the officers would have lawfully discovered the information anyway. For one, the officers had substantial probable cause for a search warrant of Wise's phone. As detailed by the Government, Wise sent sexually explicit photographs to UC-1 and UC-2 who identified themselves as fourteen. Wise also had sexually explicit conversations with UC-1 and UC-2. In addition, Wise arrived at a location discussed with UC-1 for a potential sexual encounter. This evidence was more than sufficient for a search warrant of Wise's phone. *See Stabile*, 633 F.3d at 245 (finding that officers would have inevitably discovered child pornography notwithstanding legally defective warrant where sufficient probable cause existed even without warrant). What's more, Wise ultimately consented to a data extraction of his phone, and he does not argue that that consent was involuntarily given. *See Crumblin v. New Jersey*, No. 12-6068, 2017 WL 481916, at *8-9 (D.N.J. Feb. 6, 2017) (applying inevitable discovery doctrine where consent to search was later given); *Durante v. United States*, No. 16-8949, 2020 WL 205895, at *4 n.4 (D.N.J. Jan. 13, 2020) ("[T]his Court concluded that it was

lawful under the doctrine of inevitable discovery because [p]etitioner's wife gave both oral and written consent to search the house, . . . and that [p]etitioner consented to opening the safe and was not coerced.").

### 3. *Wise's Request for an Evidentiary Hearing*

> To obtain an evidentiary hearing on a motion to suppress physical evidence, a defendant must make a sufficient showing that the seized evidence was the product of a warrantless search that does not fall within any exception to the warrant requirement. The burden is on the defendant to allege facts, sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.

*United States v. Allen*, 573 F.3d 42, 51 (1st Cir. 2009) (quoting *United States v. Calderon*, 77 F.3d 6, 9 (1st Cir. 1996)). "The decision to hold an evidentiary hearing is committed to the discretion of the district court . . . ." *Calderon*, 77 F.3d at 9. Here, Wise has not made a sufficient showing to establish that an evidentiary hearing is warranted. For the same reasons as above, the Court finds that Wise has not alleged sufficiently specific and nonconjectural facts that would lead it to conclude that the Government violated Wise's Fourth Amendment rights.

### B. Motion for Issuance of Subpoena

To obtain pretrial production and inspection of documents under Rule 17, the moving party must meet four requirements:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Fed. R. Crim. P. 17(c)(1); *United States v. Nixon*, 418 U.S. 683, 698-700 (1974*)*. Rule 17(c)(1) was not intended to be a broad discovery device, and only materials that are "admissible as evidence" are subject to subpoena under the rule. *See Bowman Dairy Co. v. United States*, 341

U.S. 214, 221 (1951). "The requesting party must show the evidentiary nature of the requested materials with appropriate specificity" and "do more than speculate about the relevancy of the materials being sought." *United States v. Shinderman*, 232 F.R.D. 147, 150 (D. Me. 2005) (citation omitted).

Here, Wise requests a subpoena for "all communications between himself and anyone else [on the Grindr application] on and including October 24, 2019, through October 26, 2019, as well as complete [Grindr] profiles for Wise and the individuals he was communicating with." (Def.'s Mot. for Issuance of Subpoena. 3-4.) He also requests "certification[s] [obtained by Grindr] from each of the undercover officers that the user is over eighteen years of age." (*Id*. at 2.) Wise has met the requirements of Rule 17(c)(1). Wise requests materials that support his defense that he "was not attempting to entice a minor or attempting to transfer obscene materials to a minor." (*Id.* at 3.) Specifically, Wise seeks materials showing that he terminated a Grindr conversation with an individual who identified himself as a minor, that the undercover officers identified themselves as adults, and that the undercover officers certified that they were not minors. Moreover, Wise likely cannot obtain complete versions of these chats and certifications from any entity but Grindr. Wise's requests are also sufficiently specific, as they request three days' worth of data and particular certificates.

The Court, however, shares the Government's concern regarding the risk of unintentionally disclosing private third-party information or compromising ongoing investigations. The Court therefore orders that the subpoena be issued for return of documents to the Court. The Court will conduct an *in camera* inspection to redact any sensitive private information. If it deems appropriate, the Court will permit the Government to request redaction of "sensitive law enforcement information that is not relevant to this case." (Gov't's Opp'n Br. 31.)

14

### C.     Motion to Sever

#### 1.     *Legal Standard*

Rule 8(a) permits joinder of multiple counts against a single defendant if the counts "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The Government may join multiple offenses in a single indictment if they "arise out of a common series of acts or transactions." *United States v. Brown*, No. 07-0296, 2008 WL 161146, at *4 (E.D. Pa. Jan. 16, 2008) (citing *United States v. Eufrasio*, 935 F.2d 553, 570 (3d Cir. 1991)).

> Rule 8(a) is construed broadly in favor of initial joinder of offenses that "are of the same or similar character" . . . . Indeed, Rule 8(a) is not limited to crimes of the "same' character but also covers those of "similar" character, which means "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness."

*United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002) (citation omitted). Joinder's purpose is to promote economy of judicial and prosecutorial resources. *See United States v. Goreki*, 813 F.2d 40, 42 (3d Cir. 1987). The movant for severance bears the burden of establishing improper joinder. *United States v. Brown*, No. 02-146-02, 2002 WL 32739530, at *3 (M.D. Pa. Dec. 17, 2002). A court addressing the propriety of joinder may consider the contents of the indictment, representations set forth in pretrial filings, and any offers of proof submitted by the government. *See United States v. McGill*, 964 F.2d 222, 242 (3d Cir. 1992) (finding that trial judges "may look behind the face of the indictment to determine proper joinder in limited circumstances," including to pretrial documents other elements of the case record).

Properly joined charges may nevertheless be severed under Rule 14 if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). That said, a court should sever charges "only if there is a serious risk that a joint trial would compromise a specific trial right of

one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A movant must demonstrate that "clear and substantial prejudice" will result if all counts of the indictment are tried jointly. *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) (citation omitted). Clear and substantial prejudice exists if the jury would be unable "to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (quoting *Davis*, 397 F.3d at 182). Mere allegations of prejudicial joinder are insufficient to warrant severance, *United States v. Urban*, 404 F.3d 754, 775-76 (3d Cir. 2005), and separation of charges may be inappropriate if limiting instructions from the court can adequately manage the possibility that a jury might misuse evidence, *Zafiro*, 506 U.S. at 539.

    2.    *Analysis*

The Court finds that the charges in this case are sufficiently related to be joined under Rule 8(a). The acts are of a similar character, given that they all involve the sexual exploitation of minors. *See United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008) ("[C]hild molestation and child pornography . . . plainly represent acts of 'similar character' involving the extraordinary mistreatment of children." (second alteration in original) (citation omitted)); *Hersh*, 297 F.3d at 1242 ("[B]oth sets of counts are 'similar' in that they reflect [the defendant's] repeated participation in the sexual exploitation of minors."); *United States v. Davies*, No. 08-253, 2010 WL 3024844, at *5 (M.D. Pa. July 29, 2010) (finding that online enticement of a minor and possession of child pornography have a sufficient "logical connection" to warrant joinder). Although the actions are not the same, Wise provides no plausible argument that the charges are not sufficiently similar. (Def.'s Mot. to Sever 1, 3; *see Davies*, 2010 WL 3024844, at *5 ("The rule is disjunctive; therefore, if any of the criteria are satisfied, joinder is permissible.").)

Wise also contends that the counts should be severed under Rule 14(a) because clear and substantial prejudice would result from their joinder. (Def.'s Mot. to Sever 4-5.) He first argues that it is "inconceivable that a jury would compartmentalize the evidence and render a verdict based only upon the evidence presented as to each count." (*Id.* at 6.) Wise adds that if the counts are not severed, evidence related to the child pornography charges (Counts 2 and 3) would be impermissibly used as propensity evidence to prove the solicitation charges, and vice versa, in violation of Federal Rule of Evidence 404(a). (*Id.* at 5-6.) District courts routinely evaluate the admissibility of evidence when making severance decisions. *E.g., United States v. Totoro*, 2017 WL 3189216, at *6-7 (E.D. Pa. 2017); *United States v. Lee*, No. 14-254, 2015 WL 12631238, at *2 (M.D. Pa. June 2, 2015). To that end, admissibility of other-crimes evidence under Rule 404(b) requires four steps:

> (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction.

*United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) (citations omitted). "[T]he purpose of Rule 404(b) is simply to keep from the jury evidence that *the defendant* is prone to commit crimes or is otherwise a bad person." *United States v. Senat*, 698 F. App'x 701, 705 (3d Cir. 2017) (internal citations and quotations omitted).

In response, the Government points to *United States v. Nestor*, 2008 WL 191217 (W.D. Pa. Jan. 22, 2008). There, the defendant was charged with solicitation of a minor and possession of child pornography. *Id.* at *1. The defendant moved to sever, citing the lack of a factual nexus between the charges, and the fact that the conduct at issue was separated by more than two years. *Id.* The court, however, found that joinder was proper under Rule 8(a) and that severance was

improper under Rule 14(a). *Id*. The Court noted that "temporal evidentiary connections are not determinative. Rather, the determining factor is whether the offenses are of the same or similar character." *Id*. As to severance, the court noted that the defendant, as here, "intends to testify in the enticement case, arguing that he had no intent to entice, but intends not to testify in the possession case." *Id*. The Court concluded that,

> [g]iven [the d]efendant's representations concerning his defenses in the enticement case, it is arguable that evidence of repeated viewing and downloading of child pornography would be relevant evidence of [the d]efendant's intent in the enticement case. Therefore, a jury would likely hear the evidence of possession of child pornography in the enticement case.

*Id*. The Court further found that because the facts of the two cases were "not intertwined . . . a jury should be more than able to separate the facts of the two offenses. Additionally, limiting instructions from the court will further limit potential prejudice." *Id*.

The Court finds *Nestor* to be analogous and persuasive authority. Like the defendant in *Nestor*, Wise claims that he lacked the intent to transmit obscene matter to a minor or entice a minor because he believed he was not communicating with a minor at all. He also has stated that he intends to introduce evidence that he cut off communications with another individual who contacted him on Grindr when he learned the individual was fourteen. (Wise Decl. ¶ 8.) Thus, the evidence of his extensive communications with the Individual regarding sexual exploitation of a 13-year-old boy and his allegedly requesting and possessing child pornography would therefore be admissible under Rule 404(b) to show absence of mistake and to rebut his anticipated defense that he believed UC-1 was an adult. *See United States v. Galleta*, 662 F. App'x 190, 194-95 (3d Cir. 2016) (finding evidence of defendant's prurient interest in children admissible under Rule 404(b) because it was "offered to rebut the anticipated defense that defendant was not interested in engaging in sexual activity with children but rather was only interested in having

sexual conversations with men. Second, the evidence was relevant to establishing his intent.").

The Court further finds Wise's proffered authority distinguishable. Wise cites *United States v. Lee*, where the court granted a motion to sever. 2015 WL 12631238, at *1. There, the defendant was charged with coercion and enticement of a minor by means of interstate commerce, transporting a minor with the intent to engage in sexual activity, receipt of child pornography, knowingly possessing child pornography, production of child pornography, and tampering with evidence. *Id.* The defendant moved to sever the first two counts from the latter four. *Id.* The court granted the motion, finding that "[i]ntroduction of this evidence of child pornography in the trial for coercion and enticement would produce clear and substantial prejudice that the jury would rely upon the evidence for an improper purpose, that is, to determine guilt based on propensity." *Id.* at *2. Notably, the court wrote that "the Government has provided [no reason] why the evidence relating to the child pornography charges would be admissible in a trial on enticement and coercion, other than to prove propensity." *Id.* But here, the Government has offered a valid basis for introducing the evidence of Wise's possession of child pornography. Indeed, the Government argues that Wise's conversations with the Individual and his possession of child pornography are directly relevant to Wise's intent in Counts 1 and 4.

Furthermore, courts have rejected claims of "spillover" generalized prejudice as a basis for mandating that a district court exercise its discretion to sever under Rule 14(a). *Davies*, 2010 WL 3024844, at *5 (citing *Rivera*, 546 F.3d at 254). Wise here has not articulated specifically what prejudice would arise from a jury's hearing the evidence of all four counts together. Further, given that the facts underlying Counts 1 and 4 are not intertwined with Counts 2 and 3, a jury should be able to compartmentalize the two sets of charges. *See Nestor*, 2008 WL 191217, at *1. To the extent any prejudice arises, the Court can issue a limiting instruction to the jury. *See United States v. Heilman*, 377 F. App'x 157, 201 (3d Cir. 2010) (affirming district court's use of a limiting

instruction, noting that a jury is presumed to follow the judge's instruction to compartmentalize evidence between counts and defendants). In sum, Wise has not shown that a "clear and substantial prejudice" will result if all counts of the indictment are tried jointly. *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005).

Nor has Defendant articulated with sufficient specificity why he would be impaired by testifying as to Counts One and Four but not as to Counts Two and Three. Although a defendant's desire to testify on some but not all counts can satisfy the prejudice required by Rule 14, a defendant must make a "convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *United States v. Reicherter*, 647 F.2d 397, 401 (3d Cir. 1981) (citation omitted). The defendant also must "present enough information regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other to satisfy the court that the claim of prejudice is genuine." *Id.* (citation and quotation omitted). Here, Wise has offered no such specifics. Instead, Wise conclusorily claims that "[i]f Counts One and Four . . . are combined for trial with Counts Two and Three . . . I will be prejudiced in my defense" and that he has "every expectation that [he] will testify in [his] Defense" as to Counts 1 and 4, but would "almost certainly" exercise his right to remain silent on Counts 2 and 3. (Wise Decl. ¶ 11.) Considering these threadbare allegations, the Court cannot determine if Wise's claim of prejudice is "genuine."

### IV. CONCLUSION

For the foregoing reasons, the Court denies Wise's Motion to Suppress, grants Wise's Motion for Issuance of a Subpoena, and denies Wise's Motion to Sever. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE